<u>Not for Publication</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRIS BURK,<br><br>    *Plaintiff*,<br><br> v.<br><br>QUEST DIAGNOSTICS, et al.,<br><br>    *Defendants*. | Civil Action No. 22-6571<br><br>**OPINION & ORDER** |

**<u>John Michael Vazquez, U.S.D.J.</u>**

  In this employment discrimination matter, Plaintiff Chris Burk alleges that his former employer and manager discriminated against him due to his sexual orientation. Currently pending is the motion of Defendants Quest Diagnostics ("Quest") and Rose Juliano to compel arbitration, or in the alternative, to dismiss. D.E. 15. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion is **DENIED** to permit limited discovery.

**I. BACKGROUND**[2]

  Plaintiff, a pharmaceutical sales representative, began working at Quest in February 2020. Compl. ¶ 32. In November 2020, Quest terminated Plaintiff due to his alleged failure to improve in the areas of development noted in his "PIP" or performance improvement plan. *Id.* ¶¶ 17-18, 103. Plaintiff alleges that he was wrongfully terminated because he is a gay man.

---

[1] The Court refers to Defendants' brief in support of their motion (D.E. 15-16) as "Defs. Br."; Plaintiff's opposition (D.E. 18) as "Plf. Opp."; and Defendants' reply (D.E. 20) as "Def. Reply".

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1.

Plaintiff further alleges that his supervisor, Defendant Rose Juliano, also discriminated against him during his employment at Quest. For example, Plaintiff alleges that Juliano placed him on a PIP even though doing so was against company police because he was a new employee. *Id.* ¶ 69. Plaintiff ultimately reached out to human resources to address his concerns in October 2020 and had a phone call with a human resources representative. Plaintiff indicates that despite a promise to do so, the human resources employee never followed-up or provided a formal response. *Id.* ¶¶ 80-81; 89-97. On October 28, 2020, Juliano copied Plaintiff and the entire sales team on an email to the human resources employee stating that Juliano was recommending Plaintiff's termination. *Id.* ¶ 98. On November 19, 2020, Quest terminated Plaintiff. *Id.* ¶ 103.

Plaintiff filed suit on November 10, 2022, asserting claims under Title VII, the New Jersey Law Against Discrimination ("LAD"), and the Equal Pay Act. Plaintiff also asserts a negligent hiring, supervision, or retention claim under the New Jersey common law. D.E. 1. Defendants filed the instant motion on January 31, 2023. Defendants contend that at the start of his employment, Plaintiff signed an Arbitration Agreement with Quest that requires Plaintiff to arbitrate each claim alleged in the Complaint. As a result, Defendants argue that this Court should stay the matter and compel arbitration. D.E. 15. In the alternative, Defendants argue that Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.      LEGAL STANDARD**

"Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 481 (E.D. Pa. 2011)). The Rule 12(b)(6) standard,

2

however, is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Id.* at 774 (internal quotations and citations omitted). Here, Defendants maintain that Plaintiff must arbitrate his claims because of the Arbitration Agreement. Defs. Br. at 10-11; Mann Decl., Ex. A. Plaintiff, however, does not rely on the Arbitration Agreement in pleading his claims or reference any arbitration agreement in the pleading. Accordingly, Defendants' arbitration defense is not clear from the face of the Complaint. The Court, therefore, must go beyond the pleading to address Defendants' arguments.

As set forth in *Guidotti*, the Court must use the Federal Rule of Civil Procedure 56 standard to "ensur[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 773-74 (internal quotation omitted). The *Guidotti* court explained that

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776; *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 317 (3d Cir. 2022) (explaining that after the plaintiffs "brought forth sufficient facts to place the arbitration agreements in question," they should have been allowed limited discovery on the issue of arbitrability before the defendant had an opportunity to file a renewed motion to compel arbitration).

Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3

matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id*.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.  Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.

## III. ANALYSIS

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). To be enforceable pursuant to New Jersey law, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."[3] *Leodori v. CIGNA Corp.,* 814 A.2d 1098, 1104 (N.J. 2003). Moreover, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs.*

---

[3] Both parties appear to assume that New Jersey law governs this dispute. Thus, the Court will apply New Jersey law to decide the motion. *See Manley Toys, Ltd. v. Toys R Us, Inc.,* No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

5

*Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. App. Div. 2011)).  Mutual asset requires that the parties understand the terms to which they purportedly agree.  "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing asset of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'"  *Id.* (quoting *Foulke*, 24 A.3d at 790-91).

Here, the Arbitration Agreement provides that "[a]ny and all claims, disputes, or controversies of any kind arising out of or relating to my employment, the termination thereof, my hiring, or any other association I have with the Company . . . shall be settled by final binding arbitration."  Mann Decl., Ex. A.  Defendants maintain that during Plaintiff's onboarding in February 2020, Quest provided Plaintiff with the pre-signed Arbitration Agreement, which "expressed Quest's assent to the Arbitration Agreement."  Madden Decl. ¶ 3.  Specifically, William C. Johnson, Quest's Executive Director of Employee Relations, docu-signed the Agreement on May 8, 2018.  Mann Decl., Ex. A at 4.   Plaintiff's initials appear on each page of the document.  Plaintiff also appears to have signed the final page on February 13, 2020.  *Id.*

"[A] party's signature to an agreement is the customary and perhaps surest indication of assent."  *Leodori*, 814 A.2d at 1107.  But Plaintiff contends that he has never seen and did not sign the Arbitration Agreement.  *See* Burk Decl. ¶¶ 5-8.  Plaintiff argues that his signature is a forgery.  Plf. Opp. at 6.  Defendants, however, provide a February 13, 2020 email from Plaintiff to a Quest employee entitled "Chris Burk's signed onboarding document".  Madden Decl., Ex. A.  In this email, Plaintiff attached several documents, including the signed Arbitration Agreement.  *Id.*  It appears that Plaintiff signed each document that he attached to the email, including the Arbitration Agreement, on February 13, 2020.  *Id.*

Plaintiff's February 13 email strongly suggests that Plaintiff signed the Arbitration Agreement. But in *Guidotti*, the Third Circuit cautioned that it "did not want to cut off legitimate disputes over an alleged agreement to arbitration." *Guidotti*, 716 F.3d at 778. Accordingly, the Circuit explained that if there is an unequivocal denial of an agreement to arbitrate with a supporting affidavit, "in most cases that should be sufficient to require a jury determination on whether there had in fact been a 'meeting of the minds.'" *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 55 (3d Cir. 1980)). The Circuit further explained that when the party seeking arbitration provides contradictory evidence, "the task of weighing the evidence and choosing which side to believe would have been for a jury." *Id.* (quoting *Kirleis*, 560 F.3d at 161-62). That is precisely what is occurring through this motion. Accordingly, there is a genuine dispute as to mutual asset.

Defendant relies on *Hemberger v. E*Trade Financial Corp.*, No. 07-1621, 2007 WL 4166012 (D.N.J. Nov. 19, 2007) to argue that despite Plaintiff's representation that he never saw the Arbitration Agreement, Plaintiff's signature alone is sufficient to compel arbitration. *Hemberger* was decided before *Guidotti*. Moreover, the plaintiff in *Hemberger* did not provide a certification supporting his argument that he did not knowingly or voluntarily agree to arbitration. *Id.* at *5. Accordingly, *Hemberger* is inapposite. Thus, given the competing evidence as to whether Plaintiff signed the Arbitration Agreement, the Court will grant the parties leave to conduct limited discovery to ensure there is a full record on the issue. After limited discovery, Defendants may file a renewed motion to compel arbitration.[4]

---

[4] The Court notes that for all submissions to this Court, Plaintiff and his attorney must comply with the Local Civil Rules and Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 11. Rule 11 requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

### IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 22nd day of May, 2023

**ORDERED** that Defendants' motion, D.E. 15, is **DENIED** without prejudice; and it is further

**ORDERED** that the parties are granted leave to conduct limited discovery as to whether there is a valid arbitration agreement between the parties; and it is further

**ORDERED** that after limited discovery, Defendants may file a renewed motion to compel arbitration.

_____
John Michael Vazquez, U.S.D.J.

---

further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Further, Rule 11 requires that a party conduct a reasonable pre-filing investigation. *United Assoc. of Plumbers & Pipefitters Loc. 322 of S. N.J. v. Mallinckrodt ARD, LLC*, No. 20-188, 2021 WL 2565464, at *4 (D.N.J. June 23, 2021) (citing Fed. R. Civ. P. 11(b)).